```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION

R. SHAWN McGREW and LEAGUE OF
UNITED LATIN AMERICAN CITIZENS,
Arkansas Chapter                                        MOVANTS

              v.         Civil No. 07-41

BIRDA TROLLINGER, et al.                               RESPONDENTS
_____


BIRDA TROLLINGER, et al.                               PLAINTIFFS

              v.   Civil No. 4:02-cv-23 (E.D.Tenn.)

TYSON FOODS, INC., et al.                              DEFENDANTS
```

## O R D E R

Now on this 16th day of November, 2007, comes on for consideration the **Motion Of Third-Parties R. Shawn McGrew And League Of United Latin American Citizens, Arkansas Chapter, To Quash Deposition Subpoena** (document #3), and from said motion, and the response thereto, the Court finds and orders as follows:

1.   This is an ancillary proceeding to obtain discovery from a nonparty in connection with a class action pending in the United States District Court for the Eastern District of Tennessee (the "Tennessee Case"). Respondents herein are the plaintiffs in the Tennessee Case, where they contend that Tyson Foods, Inc., ("Tyson") has engaged in improper conduct relating to the hiring of illegal aliens and that the League of United Latin American Citizens ("LULAC National") has conspired with Tyson in that

conduct.

Respondents caused a subpoena to be issued in the Western District of Arkansas in order to take the deposition of R. Shawn McGrew, a former State Director of the League of United Latin American Citizens, Arkansas Chapter ("LULAC Arkansas")(collectively, the "Movants"). Neither LULAC National nor LULAC Arkansas are parties to the Tennessee case.

2. Movants contend that McGrew's deposition is a fishing expedition, that any lobbying activities he or LULAC Arkansas may have engaged in are protected by the First Amendment, and that it would be unduly burdensome for them to have to present McGrew for deposition. The relief sought is an order either quashing the subpoena, or directing plaintiffs to defray all reasonable costs incurred in responding to it, as well as costs and fees associated with filing the motion itself.

Respondents take the position that they are entitled to depose McGrew in connection with his communications with Tyson's employees about proposed Arkansas legislation that would have allowed local authorities to enforce immigration laws, and the involvement of McGrew and LULAC Arkansas in an alleged RICO enterprise - involving Tyson and LULAC National - to depress the wages of Tyson's employees "by knowingly hiring a workforce substantially comprised of undocumented illegal immigrants."

The parties have conferred with regard to this discovery

dispute and have been unable to resolve it. They now ask the Court to resolve it.

3. The use of subpoenas in civil litigation is governed in the first instance by **F.R.C.P. 45. Subsection ((c)(3)(A)** of that rule provides that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iv) subjects a person to undue burden."

In addition, **F.R.C.P. 26(c)** provides that

> [u]pon motion by . . . the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, . . . on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a . . . person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

**F.R.C.P. 26(b)(1)** outlines the scope of discovery, and thus the matters which may be covered in a deposition:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence, as defined in **F.R.E. 401**, is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The Eighth Circuit has acknowledged that

> "[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information."

**Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2**, 197 F.3d 922, 925 (8th Cir. 1999), quoting **Micro Motion, Inc. v. Kane Steel Co., Inc.**, 894 F.2d 1318, 1323 (Fed. Cir. 1990).

In the same case, the Eighth Circuit recognized that non-party depositions have the potential for abuse, and are subject to more restrictions than party depositions. *Id.*, **197 F.3d at 927**(nonparties afforded special protection against time and expense of complying with subpoenas).

It is with these governing legal precepts in mind that the Court reviews the Second Amended Complaint in the Tennessee Case.

4.   Plaintiffs in the Tennessee Case purport to represent "all persons legally authorized to be employed in the United States . . . who have been employed by defendant Tyson Foods, Inc.("Tyson")." They accuse Tyson of engaging in a conspiracy "to depress the wages paid to its employees by knowingly hiring a workforce substantially comprised of undocumented illegal immigrants. . . ."

It is alleged that because Tyson "faced a crisis in its relations with the Hispanic community" after being indicted for employing illegal aliens in 2001, it formed a "long-term

partnership" with LULAC and another "major Hispanic group[]," pursuant to which Tyson gives LULAC "significant sums of money, conducts regular meetings with their leadership and cooperates in areas of common interest."  It is alleged that the "common purposes and goals the groups and Tyson jointly advance are both legitimate and illegitimate."

The alleged illegitimate purpose is said to be the hiring of illegal aliens "without the use of alien smuggling or temporary employment services, as requested by the groups" and "in the way LULAC . . . prefer[s]."  It is alleged that Tyson has hired "a full-time liaison, Ana Hart, to maintain and promote the partnerships" and that Hart is "engaged in daily contact with the leadership of the groups and some of their chapters, particularly the chapters in Northwest Arkansas."  The Second Amended Complaint concludes, from these allegations, that Tyson, and the Hispanic groups "have formed an association-in-fact RICO enterprise."

5.   The Court rejects the argument that McGrew's deposition is a fishing expedition.  The foregoing summary of the relevant allegations of the Second Amended Complaint demonstrates the relevance of the testimony of the former State Director of LULAC Arkansas as to his and LULAC Arkansas' involvement with Tyson. Although Brent Wilkes, the Executive Director of LULAC National, has been deposed, counsel for LULAC National at Wilkes' deposition stated repeatedly that Wilkes was testifying on behalf of LULAC

National, not on behalf of any of its chapters.  When asked about possible lobbying by LULAC in the State of Arkansas, Wilkes stated "I think you would have to talk to the state director in question at the time . . . ."  Wilkes later noted that his focus was "the national organization.  We deal with national issues.  We're not privy to everything that the states are doing at the state level."

Nor is the Court persuaded by Movant's First Amendment argument.  LULAC Arkansas asserts that it has the First Amendment right to lobby in support of any legislation it chooses.  The Court does not question this statement, but simply notes that an inquiry into why LULAC Arkansas chose to lobby for particular legislation might shed light on whether it was influenced to do so as a result of some impermissible conspiracy with Tyson.

Finally, the Court is not persuaded that McGrew's deposition would unduly burden the Movants.  McGrew works in Benton County, Arkansas, and is subpoenaed for deposition in nearby Fayetteville.  Respondents have offered to pay his travel expenses to attend the deposition.  No document production is called for. There is no showing that McGrew will lose pay as a result of an absence from work for the deposition.  LULAC National supports its "undue burden" argument with the Declaration of Luis Roberto Vera, Jr., general counsel for LULAC National, wherein Vera avers that LULAC National has been billed $78,604.25 for "efforts in responding to third party discovery propounded by" the plaintiffs.  It is clear

from the Declaration, however, that little if any of that amount can be said to relate to discovery propounded to Movants.

For the foregoing reasons, the Court finds that the **Motion Of Third-Parties R. Shawn McGrew And League Of United Latin American Citizens, Arkansas Chapter, To Quash Deposition Subpoena** (document #3) should be, and same hereby is, **denied.**

**IT IS SO ORDERED.**

                                             /s/ Jimm Larry Hendren
                                            **JIMM LARRY HENDREN**
                                            **UNITED STATES DISTRICT JUDGE**